Appeal of UNITED STATES.

In re HEBREW SACRAMENTAL WINE COMPANY, Inc.

In re 125 FIRST STREET, NEW YORK CITY.

No. 290.

Circuit Court of Appeals, Second Circuit.

May 5, 1930.

The appellee, Hebrew Sacramental Wine Company, Inc., was granted a permit, which on its face expired December 31, 1928, to sell wines for sacramental purposes to persons holding permits to purchase. On March 17, 1928, after a hearing, the permit to sell was revoked by the Prohibition Administrator. The Hebrew Sacramental Wine Company, Inc., applied for a special permit to dispose of the wines remaining on hand after the revocation, but received no answer to its request, and no special permit was in fact issued. Thereafter, on February 20, 1929, a Federal Prohibition Agent applied for a search warrant because these wines were held in violation of the Prohibition Law being possessed without a permit. Thereupon a search warrant was issued by a United States commissioner and the liquor, consisting of about 40,000 gallons, was seized. From the time the permit to sell was revoked until the issuance of the search warrant, the Hebrew Sacramental Wine Company, Inc., filed with the Prohibition Department monthly reports on Treasury Department form 702 containing statements of the quantity of wine possessed on the last day of each month. After a hearing, the Commissioner vacated the search warrant, on June 10, 1929, on the ground that possession of wine originally held under a valid permit had not become unlawful merely because the permittee continued to hold it after revocation. The Commissioner also directed the return of the wine to the appellee. His order was affirmed by the District Court, and, from the order of the latter, this appeal has been taken by the United States.

Charles H. Tuttle, U. S. Atty., and William L. Taggart, Sp. Asst. U. S. Atty., both of New York City (Thomas E. Kerwin, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Blau, Perlman & Polakoff, of New York City (Moses Polakoff, of New York City, of counsel), for appellee Hebrew Sacramental Wine Company, Inc.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above).

The errors which appellant insists were made by the court below were:

(1) In holding that the possession of intoxicating liquors originally acquired under a permit does not ipso facto become unlawful when the permit is revoked.

(2) In ordering the return of the wine to Hebrew Sacramental Wine Company, Inc., when the search warrant under which it had been seized was vacated.

It has been held by the Court of Appeals for the Third Circuit in Hazelwood Brewing Co. v. United States, 3 F.(2d) 721, and by the Court of Appeals for the Ninth Circuit in Orient Ins. Co. v. Ariasi, 28 F.(2d) 579, that the mere retention of intoxicating liquors after a permit has terminated is not a violation of the Prohibition Act. Our independent consideration of the portions of the act applicable to the situation here impels us to reach the same conclusion in the present case.

Section 25 of title 2 of the Prohibition Act (41 Stat. 315 [27 USCA § 39]) makes it unlawful "to have or possess any liquor * * * intended for use in violating" the act "or which has been so used." In both the Hazelwood and the Orient decisions, supra, and likewise in the present case, the government sought to show that the posses-

426

sor had violated and intended to violate the law in other ways than by merely retaining possession after the termination of the permit. But because of failure to prove any independent violations here, the appellant is forced to resort solely to the claim that the retention of the wine, after the permit terminated, was unlawful. To support this contention, it quotes section 3 of title 2 of the act (41 Stat. 308 [27 USCA § 12]), providing that "no person shall on or after the date when the eighteenth amendment to the Constitution of the United States goes into effect, * * * possess any intoxicating liquor except as authorized in this act, * * *" and section 33 (41 Stat. 317 [27 USCA § 50]), providing that "after February 1, 1920, the possession of liquors by any person not legally permitted under this title to possess liquor shall be prima facie evidence that such liquor is kept for the purpose of being * * * disposed of in violation of the provisions of this title."

Section 522 of Regulations 2 of the Treasury Department is also relied on, which reads as follows:

"When any permit is revoked all liquors on hand in possession of the permittee by virtue of such permit may continue to be lawfully possessed by him for a period of 30 days after such revocation, but only for the purpose of making lawful disposition thereof on proper permit therefor, which permittee shall do within said period. After the expiration of said period of 30 days the possession by permittee of such liquors will be unlawful and same may be seized and forfeited as provided by law for the seizure of other liquors not possessed under lawful permit, unless special permit, authorizing such possession has been obtained."

Section 3 of title 2 provides that "wine for sacramental purposes may be manufactured, purchased, sold, bartered, transported, imported, exported, delivered, furnished and possessed, but only as herein provided, and the commissioner may, upon application, issue permits therefor. * * *"

There was a rehearing of the revocation of the permit pursuant to regulations, and, on June 19, 1928, the revocation was sustained as of March 17. The permittee was notified of this action on July 12, 1928, and at the same time was furnished with application blanks for a special permit to dispose of the wines remaining on hand. After considerable negotiations with the Department and as late as December 10, 1928, the appellee made its application for a special permit to enable it to dispose of its remaining stock. This application was never acted upon, though such a permit might perhaps be granted under section 522 of the above Regulations; for it contains no express requirement that a special permit must be applied for within the 30 days after revocation to which the original permit is automatically extended for the purpose of disposing of surplus stock.

So we have a situation where wines were lawfully acquired under a valid permit, where no sufficient proof was adduced of use in violation of law, and where the original permittee was negotiating with the Department and seeking a special permit to enable it to dispose of its stock after the original permit ceased, and the Department took no action upon the application.

The question presented is whether, in the foregoing circumstances, there was probable cause for issuing the search warrant.

It is said that possession of the wine became unlawful as soon as the permit was revoked and the 30 days of extended time expired, or, at any rate, within a reasonable time thereafter. But nowhere is there any statutory provision affecting the right to possession or disposition of wine after the permit under which it was originally held had for any reason ceased. Only the three provisions already mentioned seem even remotely to bear on the situation. The first is section 3, which declares that no person shall "possess any intoxicating liquor except as authorized" in the Prohibition Act. The second is section 25, which only makes possession of liquor unlawful if "intended for use in violating" the act "or which has been so used." When, section 25 goes on to declare that "no property rights shall exist in any such liquor," it implies that the liquor must have been used or intended to be used in violation of the act before becoming subject to confiscation, and no such situation existed here. The third provision which might affect the rights of the parties here is section 33, which declares that "the possession of liquors by any person not legally permitted * * * to possess liquor shall be prima facie evidence that such liquor is kept for the purpose of being * * * disposed of in violation" of law.

It is argued that the presumption created by section 33 dispenses with any further proof on the part of the government. But it is overcome by the fact that the original possession was obtained under a lawful permit and that nowhere does the statute declare

the continuing possession a violation of the act unless it is shown to have been with the intention of using the liquor in violation thereof. Street v. Lincoln Safe Deposit Co., 254 U. S. 88, 41 S. Ct. 31, 65 L. Ed. 151, 10 A. L. R. 1548; Dumbra v. United States, 268 U. S. 435, 45 S. Ct. 546, 69 L. Ed. 1032.

Moreover, if the Department has power to make regulations to regulate the disposal of wine after the revocation of permits, it cannot be that the appellee lost all its rights in the undisposed of liquor because of the revocation of the permit. A regulation, if purporting to confiscate all such liquor, is unreasonable and unwarranted by the statute. If the application for a special permit might be made at any time, as on the face of the Regulations may perhaps be the case, a forfeiture of title for lack of a permit during the pendency of the application would be repugnant to the entire purpose of the provision for special permits. If, on the other hand, the regulation be regarded as providing for a confiscation of the wine in the circumstances of this case, it is beyond the intendment of the statute, for the reason that a permittee can only suffer such a penalty when the liquor which remains undistributed upon the termination of the permit is intended to be used or has been used in violation of the Prohibition Act.

We feel no doubt that a temporary permit to dispose of surplus liquor ought to be issued where, as in this case the government has failed to establish that the statute has been violated.

[3] It is further contended by the United States that the wine ought not to be returned because it does not appear that the search and seizure were unlawful, independently of the search warrant. But, if such a claim were to prevail, it would place the burden on the appellee of showing that the seizure under an invalid search warrant was unlawful instead of making the government, who is the actor in the case, justify the seizure. Section 25 of title 2 of the Prohibition Act (41 Stat. 315 [27 USCA § 39]) makes all such seized property "subject to such disposition as the court may make thereof." Liquor seized without probable cause must be disposed of by returning it to the owner.

We feel no doubt that (a) the possession of the sacramental wine remained lawful after the termination of the permit; (b) the search warrant was accordingly issued without probable cause and was therefore rightly vacated; (c) the wine was properly directed to be returned to the appellee.

The order is accordingly affirmed.

### On Petition for Rehearing.

It is contended by the government that section 9 of title 2 of the National Prohibition Act (27 USCA § 21) prohibits the granting of a permit to a person whose permit has been revoked prior to one year after revocation. Section 522 of the Regulations allows disposition of liquors for thirty days after revocation of a permit or for a longer period if special permission is obtained. This regulation represents the departmental construction of the statute and indicates its view that the inhibition of section 9 does not prohibit mere licenses to dispose of surplus stock remaining on hand at the time when the original permit is revoked. Strictly speaking, it is unnecessary to say whether or not the regulation is valid. In our prior opinion we assumed that it was, and we still cannot see why the appellee should not be granted a temporary permit to dispose of its surplus stock, seeing that the possession thereof remained lawful. But, irrespective of this, after the revocation of the permit, the possession of the sacramental wine remained lawful, and the wine was properly directed to be returned to the appellee.

Petition for rehearing denied.